**U.S. Department of Justice**



*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

July 25, 2012

Honorable William H. Pauley
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York  10007

    **Re:  *United States* v. *Anthony Scolaro*,**
          **11 Cr. 429 (WHP)**

Dear Judge Pauley:

    The Government respectfully submits this letter to advise the Court of the pertinent facts concerning the assistance that defendant Anthony Scolaro has rendered in the investigation of other persons.  In light of these facts, the Government moves, pursuant to Section 5K1.1 of the Sentencing Guidelines, that the Court sentence the defendant in light of the factors set forth in Section 5K1.1(a)(1)-(5) of the Guidelines.

    On December 10, 2010, Scolaro pleaded guilty to Counts One and Two of the above-captioned Information.  Count One of the Information charged Scolaro with conspiring with other individuals to commit securities fraud, in violation of Title 18 United States Code, Section 371, in connection with a scheme to engage in insider trading from in or about October 2007 through in or about 2008.  This charge carries a maximum sentence of five years' imprisonment, a maximum term of three years' supervised release, a maximum fine, pursuant to Title 18, United States Code § 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense, and a mandatory $100 special assessment.

    Count Two of the Information charged Scolaro with securities fraud, in violation of Title 15, United States Code Sections 78j(b) and 78ff, and Title 18, United States Code, Section 2, in connection with a scheme to defraud by engaging in insider trading with respect to shares of Axcan Pharma, Inc.

Honorable William H. Pauley
July 25, 2012
Page 2

("Axcan").  This charge carries a maximum sentence of 20 years' imprisonment, a maximum term of three years' supervised release, a maximum fine of $5 million, and a mandatory $100 special assessment.

I.    **Scolaro's Criminal Conduct**

Scolaro committed his crimes while working as a portfolio manager at Diamondback Capital Management ("Diamondback"), a United States hedge fund.  When Scolaro started working at Diamondback Capital, he managed investments of approximately $100 million.

While working at Diamondback, Scolaro received material, nonpublic information regarding the acquisition of Axcan by TPG Capital ("TPG") and its affiliates from a friend, Franz Tudor.  Tudor learned about the acquisition from Zvi Goffer, who bribed two Ropes & Gray attorneys to obtain the information.  As a result of the information provided by the Ropes & Gray attorneys to Goffer, in approximately October 2007, Tudor told Scolaro that a private equity firm was interested in acquiring Axcan.  Scolaro then purchased or caused to be purchased tens of thousands of shares of Axcan stock.  Subsequently, Tudor updated Scolaro regarding the potential acquisition. For example, at one point, Tudor told Scolaro that his lawyer contact said everything was fine.  At another point, Tudor told Scolaro that TPG was the buyer, and gave Scolaro a price range.

Scolaro purchased tens of thousands of shares of Axcan stock in the fund that he was managing at Diamondback based on Tudor's information.  After the public announcement on or about November 29, 2007, Scolaro sold all of the Axcan shares, earning profits for the fund in the amount of approximately $1,100,000.  There is no evidence that Scolaro knowingly traded on inside information in other securities.

In the course of the SEC's overt investigation into trading in Axcan stock, the SEC Staff contacted Diamondback.  In turn, Diamondback asked Scolaro about trading in Axcan, and Scolaro denied that his trading was based on material, nonpublic information.  During consensually recorded conversations between Tudor, a cooperating witness, and Scolaro (who was not cooperating at the time), Tudor and Scolaro discussed the SEC's investigation, including the fact that their prior conversations were not reflected in any written materials.

Honorable William H. Pauley
July 25, 2012
Page 3

## II.  Scolaro's Cooperation

Scolaro provided substantial assistance to the Government.

After being approached by special agents of the Federal Bureau of Investigation ("FBI"), Scolaro accepted responsibility immediately and started cooperating with the Government shortly thereafter.

Scolaro provided significant information to the Government and participated in numerous consensually recorded conversations in connection with the Government's investigations into matchmaking firms, *i.e.*, firms which matched up hedge fund clients with, among other people, employees at public companies or employees who had access to material, nonpublic information relating to public companies.  In connection with those investigations and at the FBI's direction, Scolaro made 43 consensually monitored calls with various individuals.  Many of these calls provided leads and other valuable information relating to the Government's investigations.

At the FBI's direction, Scolaro also had several in-person consensually recorded conversations with individuals.  These meetings provided leads and other valuable information relating to the Government's investigations.

Scolaro also provided information that was used in connection with obtaining a search warrant for the offices of Diamondback.  Among other things, Scolaro provided information regarding the location of a particular individual's desk and a seating chart of the trading floor during the time Scolaro worked there.

During the Government's investigations, Scolaro spoke with FBI agents on approximately 75 occasions over an 18-month period prior to the unsealing of Scolaro's guilty plea in or about May 2011.  In addition, Scolaro met with FBI agents on approximately ten occasions.

Since being approached by the FBI, Scolaro never complained or hesitated in providing assistance to the Government.  Scolaro never minimized his role in the insider trading scheme with Tudor, recognized the wrongfulness of his actions, and did everything that he could do at the FBI's direction to make amends for his criminal conduct.

Honorable William H. Pauley
July 25, 2012
Page 4

### III. Conclusion

Scolaro's timely cooperation with the Government was substantial. Scolaro provided evidence in connection with important insider trading investigations in the matchmaking industry. Scolaro's cooperation provided the Government with valuable information about the hedge fund industry and the use of matchmaking firms. Scolaro's cooperation led directly to several investigations and would be important should any additional subjects of those investigations be charged with crimes. Therefore, this Court should sentence Scolaro in light of the factors set forth in Section 5K1.1(a)(1)-(5) of the Sentencing Guidelines.

                                Respectfully submitted,

                                PREET BHARARA
                                United States Attorney

By:  /s/
                                Reed Brodsky/Antonia Apps
                                Assistant United States Attorneys
                                Tel.:  (212) 637-2492/2198

cc:  U.S. Probation Officer
     William Brodsky, Esq.